91 F.3d 144
 25 Media L. Rep. 1057
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ken STILTS, Plaintiff-Appellant,
v.
GLOBE INTERNATIONAL, INC., and Bob Michals, Defendants-Appellees.
 No. 95-5554.
 United States Court of Appeals, Sixth Circuit.
 July 2, 1996.
 
 Before: MARTIN and SILER, Circuit Judges; and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 On April 5, 1994, Globe International, Inc., published an article entitled, "Wynonna and Naomi: We were ripped off $20 million!--they blame ex-business manager, say pals" in its periodical called The Globe. The article, written by Bob Michals, reports on the business relationship between former business manager Ken Stilts and Wynonna and Naomi Judd (a/k/a "The Judds," a country music singing duo). Selecting certain passages from the article, Stilts states that, in addition to the Judd's accusation that he ripped them off, the article reports that he had been "bleeding them dry for 10 years--then dumped them," that Stilts "couldn't be trusted" and "wound up with nearly $20 MILLION of the money they [the Judds] had earned, and they were left with only $5 millon," that Wynonna Judd was "betrayed and used" and had "the rug jerked out from under" her by Stilts, that Stilts "pocketed most of what [the Judds] had earned" and that Stilts "owned practically everything [the Judds] worked so hard for--even their cars," and that Stilts "had [the Judds'] cars picked up in their driveways." The defendants argue that the article is about the cause of the Judds's break-up with Stilts--that Stilts used his authority over the Judds's business affairs through his power of attorney to unfairly and unduly enrich himself at their expense.
 
 
 2
 Based on this article, Stilts filed a libel action in state court on May 3, 1994. On May 17, 1994, Globe International and Michals (collectively the "Globe") removed that action to federal court under diversity jurisdiction. On November 9, 1994, the Globe filed a motion for summary judgment to which Stilts filed a response. On January 26, 1995, the district court heard oral argument on the motion. On February 21, 1995, the district court granted the defendants' summary judgment motion, dismissing the action with prejudice. Stilts moved to alter, amend or set aside the judgment, which was denied. This timely appeal followed.
 
 
 3
 Stilts's motion to amend, alter or set aside the district court's judgment challenges only the propriety of the district court's decision to grant summary judgment to the defendants. Therefore, we review the court's decision to deny his Rule 59(e) motion by the same standard as we do the court's decision to grant summary judgment. Columbia Gas Transmission, Corp. v. Limited Corp., 951 F.2d 110, 112 (6th Cir.1991) (stating that "when a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, we conduct de novo review"). We review the district court's decision to grant summary judgment de novo. Rowley v. United States, 76 F.3d 796, 797 (6th Cir.1996). In our review, we examine all of the evidence presented to determine whether there is a genuine issue as to any material fact for resolution at trial and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether summary judgment is proper, we view the facts and any reasonable inferences drawn from those facts in a light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).
 
 
 4
 Stilts raises three claims on appeal. First, he argues that the district court erred in determining that no genuine issue of fact existed regarding whether the article was capable of being understood by readers in a defamatory sense. Stilts claims that his evidence shows that his being accused of "ripping off" $20 million is capable of being understood as accusing him of stealing or misappropriating money that didn't belong to him. Stilts offers the deposition statements of Globe employees, "potential trial witnesses," a Pollstar[1] article reporting that Stilts "stole $20 million from the Judds," as well as a Nashville Banner article reporting the district court's ruling, to show that the article was capable of being understood as accusing him of illegal activity.
 
 
 5
 The district court first had to determine as a matter of law whether the article was capable of being understood as defamatory. Stones River Motors. Inc. v. Mid-South Publishing Co., 651 S.W.2d 713, 718 (Tenn.Ct.App.1983) (citing Memphis Publishing co. v. Nichols, 569 S.W.2d 412, 419 (Tenn.1978)). The district court found that it would be "impossible" to understand the headline as charging Stilts with a crime or other improper act, and found it "impossible to believe that any reader would construe the text of the article as defamatory." The writer and editors of the Pollstar article believed that the word "stole" characterized what the Judds thought Stilts had done with their money. J.A. at 941. Stilts argues that the definition of "rip off" in Webster's New World Dictionary, Second Edition, includes "to steal" or "to rob," and so "rip off" could be understood in a defamatory sense. For purposes of reaching our decision, we will accept Stilts's assertion that he has created a factual dispute regarding whether the various statements in the article are capable of being understood to mean that he stole the money. We will also accept that an accusation that he "stole" money is actionable. For a defendant's statement to be libelous it must be more than annoying, offensive or embarassing; it must subject the plaintiff to "public hatred, contempt or ridicule." Stones River, 651 S.W.2d at 719 (defining what statements are libelous).
 
 
 6
 Stilts next argues that the court erred in concluding that the "gist" of the article is substantially true. The court in Stones River reasoned that to be actionable "[t]he damaging words must be factually false. If they are true, or essentially true, they are not actionable, even though the published statement contains other inaccuracies which are not damaging. Thus, the defense of truth applies so long as the 'sting' (or injurious part) of the statement is true." Id. at 720. He argues that the "gist" or "sting" of the article is that he stole $20 million from the Judds and that this allegation is demonstrably false. We agree with the district court, however, that the "gist" of this article is not that Stilts stole money from the Judds, but that a controversy exists between the Judds and Stilts regarding their business affairs, and that Stilts exploited this relationship through legal means (their contract and/or the power of attorney). Particularly applicable to this case, the Stones River court discussed whether comments or characterizations of published facts could be libelous, and under what circumstances. The court determined that, where an article publishes facts, as well as comments and characterizations of those facts, the comments and characterizations would not be libelous if the facts were true.
 
 
 7
 Since a statement must be factually false in order to be actionable, comments upon or characterizations of published facts are not in themselves actionable. If the published facts being commented upon are true and nondefamatory, the writer's comments upon them are not actionable, even though they are stated in strong or abusive terms. This principle has been given constitutional protection under the First Amendment by the United States Supreme Court.
 
 
 8
 Id. at 720 (citing Greenbelt Cooperative Publishing Assn., Inc. v. Bresler, 398 U.S. 6, 13-14 (1970)). In Stones River the court held that the statements made by one of the defendants in a published "Letter to the Editor" regarding his dealings with a used car dealership were not actionable since they were characterizations or opinions regarding nondefamatory facts. Id. at 721. The defendant had called the dealership's handling of repairs and trade-ins as a "rip-off" and "highway robbery," but did not allege that the dealership violated any legal responsibility. The letter also accurately described the series of transactions that he had in purchasing two used cars from the dealership. Id. at 715.
 
 
 9
 Here, the gist of the article is that there is a controversy concerning the terms of a power of attorney, apparently contained in a contract, that gives Stilts a certain amount of the Judds's earnings. The Judds believe that Stilts's portion is too large. The gist of this article is substantially true. The controversy between the Judds and Stilts has resulted in the Judds suing Pro Tours, Inc., a company owned jointly by Stilts, the Judds and another person, for fraud, breach of fiduciary duty, breach of contract, unjust enrichment, and conversion. The Judds have also sued the law firm that allegedly represented both Stilts and the Judds for professional negligence and breach of fiduciary duty. We agree that the gist of this article is about the controversy that exists between the Judds and Stilts concerning their mutual business affairs and the hard feelings between the Judds and Stilts because Stilts desired to have, and was given by the Judds, power of attorney over the Judds's finances. We see no distinction between the characterizations of the nondefamatory facts the state appellate court found nonlibelous in Stones River and the characterizations in the Globe article. See also Greenbelt Cooperative, 398 U.S. at 13-14 (statements characterizing plaintiff/developer's negotiating position vis-a-vis the city as "blackmail" could not be understood as alleging criminal activity in context of articles). Stilts, therefore, has not created a genuine issue of material fact regarding whether or not the "gist" or "sting" of the article is demonstrably false. Indeed, the evidence shows that the existence of a controversy regarding the business affairs, and in particular Stilts's legal right to some portion of the Judds's earnings, is substantially true.
 
 
 10
 Because Stilts has not presented evidence to create a jury question regarding the defendant's claim of truth, we AFFIRM the decision of the district court.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 A publication covering the music industry